Let's turn to the last case on the day calendar, U.S. v. Bordeaux. May it please the Court, Counsel, Brian Spears and Janet Eastwood for the appellant Aldrich Bordeaux. Two of the three robberies at issue in this case occurred at nearly the same time and in nearly the same location and involved multiple co-conspirators. These two robberies we submit constitute one criminal episode. As a result, there are just two, not three, qualifying felonies under the Armed Career Criminal Act, and the mandatory 15-year sentence does not apply in this case. That's the issue in this appeal. The standard is not how close they are temporally except insofar as that bears on whether they're distinct acts and whether the defendant could have basically stopped. And it seems to me you have a tough argument there because you can hardly say that he had to go from one location to the next. If Your Honor, please. The concern is you've got three people standing in front of you, you rob all of them at once. And that's viewed as one act. But where your client has to travel a distance, albeit not a long one, I think you're hard-pressed to argue that he couldn't have stopped the crime spree. If Your Honor, please, the problem for the government, and it is the government's burden of proof, is that on this record, looking only at the Shepard and Taylor materials that the district court was bound to look at, there is significant ambiguity about when the robberies occurred and the location of them. Words like in the vicinity of or at approximately, in reference to the location and time, are very pivotal here. They wouldn't normally be if you had acts occurring over a longer period of time, say hours or days. You're not saying they happened at the same location, right? We actually, we don't know exactly where they happened. We know that as the crow flies, it was less than five miles. Right. That's not an insignificant difference in terms of ceasing the criminal activity. I just want to correct that. It's less than .5 miles. It's less than half a mile away. But when you put in words such as vicinity of and occurring at approximately certain times, all of a sudden this becomes a very ambiguous. Government's burden? The government has the burden of... Of preponderance, right? Of preponderance, yes, Your Honor. Go ahead. And the government is confined to the Shepard and Taylor materials. And we know that one took place on Wood Avenue, one on Federal Street, and we have addresses for those two, right? And then one took place in the vicinity of Grand and Lexington. Isn't that right? Right. Three different places. Three different locations. Three different victims. There were three different victims, Your Honor. Three different times. Well, if Your Honor, please, we don't know exactly when the times were or what exactly the locations are. So each of the three robberies refers to locations as the vicinity of. But we know that the first one took place at about 10 p.m. And then there's another indication that it might have been 1009. And then the second one took place at 1015 or 1024, right? Do I have those times right? Who cares? They're at least minutes apart and they're at least blocks apart. Why isn't that? Well, if Your Honor, please, at some point the offenses can be so close in time as to constitute a single criminal episode. The basic logic is that a defendant must have time to reconsider and to cease the criminal activity. So the shorter, the more compressed the time, the less an opportunity like that exists. And so Your Honor is correct. I mean, if you go to the police reports, you see that the time was 1009 for the first robbery. And then you're talking about a six-minute differential. But if you put words such as approximately in the vicinity of, all of a sudden it's even more compressed. So at a certain point, and the court in Rideout, which really is sort of the seminal case that governs the Second Circuit's analysis here, recognized that its situation was different from a situation like this where the activity was more compressed in time and location. Rideout involved burglaries during the daytime occurring approximately 12, 13 miles apart, 20 to 30-minute drive in two different counties in Vermont. In that situation, it is different where a perpetrator is getting in a car, driving to the next location, having a real meaningful opportunity to think about whether it's advisable to recidivate and make another engagement in more criminal activity. Another point that I wanted to make on this that I think supports our position is to focus on this court's decision in the United States versus Dantzler, which Judge Cabranes authored. Dantzler is significant. First, it sets the record straight that Shepard and Taylor materials are required for determining whether the number of criminal episodes. So for this analysis, we're bound by Shepard and Taylor. But interestingly, in that decision, there was a question because the defense attorney didn't object to the use of materials going beyond Shepard and Taylor. And the court then had to address whether it was harmless error, whether the error affected substantial rights. And the court's reasoning in finding that it did affect substantial rights was to look to what the district court judge said in that case. And I wanted to quote because it's very pertinent here. The district judge said in Dantzler, if Dantzler had gone from car to car of the number six train and robbed a bunch of people, that I could consider one incident. And our position is that on a vague record such as this, when criminal offenses become so compressed in time and location, it is different than the situation in Rideout and the other cases that the government has cited. And what adds to the ambiguity further in this case is the fact that we have multiple co-conspirators, which raises the ambiguity also of what the roles were of the other co-conspirators. And there's nothing in the record to describe what the other co-conspirators did. Did they stay behind after the first robbery as the others proceeded to the second? We don't know. And that would affect the continuity of the criminal activity. In support of that, if Your Honors please, is the Sixth Circuit case of the United States v. Barber, which talks about the effect of co-conspirators and multiple offenders involved in the same criminal activity and how that ultimately creates an ambiguity in the record. And in that case, the Sixth Circuit found that it was reversible error. The other point that I wanted to emphasize, too, is that the record here is also unreliable. Now, most of the case law is phrased in terms of whether the record is equivocal or ambiguous. There was one case cited in our brief, United States v. McCloud, which is an Eleventh And there's an issue here because we know that the plea colloquy, which referenced 10 o'clock as the time of the first robbery, is wrong. And, you know, while we're bound by Taylor Shepard, we do know from the police reports, and this is in the district court's ruling, that the time of the complaint was 10.09. So there were reliability issues in addition to the ambiguities as a result of which we submit to the court that it's a single criminal episode. As a result, there are only two qualifying offenses. And our client, who otherwise would have been subjected to a far lesser sentence, should not have been. Do you dispute that this is a factual determination by the district court whether or not the acts were distinct or not? What's your position on that? Our position on that is that it's subject to de novo review by the court. Because? Because the record is established by virtue of the Shepard and Taylor materials. And that's the universe of the record. There's no further fact-finding to occur. Okay. Thanks, Raymond. I've reserved two minutes for rebuttal. Thank you. May it please the court. My name is Jennifer Lariah, and I represent the United States. Your Honors, Judge Thompson appropriately sentenced Mr. Bordeaux, pursuant to the Armed Career Criminal Act, because he had three predicate violent felony convictions, all for first-degree robberies, which were committed on November 24th of 2009. Mr. Bordeaux is convicted pursuant to subsection A-4 of Connecticut's first-degree robbery statute, which qualifies categorically as a violent felony as it requires display or threatened use of what is represented to be a firearm. Even if he doesn't have a firearm, right? That's correct, Your Honor. And that's good enough? It is, Your Honor, because it still requires the display or the threatened use of a firearm. I believe that is sufficient, Your Honor. The threat to use. The threat to use, Your Honor. The use, that's the critical word here, both for purposes of the Connecticut law and also for the ACCA. Is that right? Yes, Your Honor. But that doesn't have to be a threat to use. You can just display it, right? You can just display it, and I think that that conveys an implicit threat. When a person is committing, because Your Honors have to remember that in the context of displaying this firearm, or what's represented, rather, to be a firearm, or threatening the use of what is represented to be a firearm, the defendant isn't doing it in a vacuum. The defendant is doing that during the commission of a robbery or immediate flight there from a robbery. Connecticut law does require use or threatened use of physical force during the commission of a robbery. And as such, that constitutes, particularly given the display or threatened use of what's represented to be a firearm, which by definition threatens a grave injury to a person, if not death, that that would constitute a violent felony under the Armed Crew Criminal Act. Now, while each of these first-degree robbery convictions were obtained based on conduct which occurred on the same day, they were committed on occasions different from one another within the meaning of the Armed Career Criminal Act. The Shepard-approved record before Judge Thompson, and also before this court, includes a detailed plea colloquy wherein the assistant state's attorney gives a fairly detailed recitation of the conduct. And Mr. Bordeaux agrees with that conduct with no correction. That recitation makes explicit that this was a series of robberies. That plea colloquy also establishes that these offenses were committed at different locations within the city of Bridgeport, that they involved three separate victims, and that they were separated by the passage of time. Judge Thompson, in his written opinion, appropriately analyzed those factors in accord with this court's decision in write-out, and appropriately determined that these constituted separate criminal episodes, and as such, that they qualified as separate predicates under the Armed Career Criminal Act. For that reason, the government submits that this court should affirm Judge Thompson's judgment in that respect, that these, that there are three violent felony convictions, and that ACCA is appropriately applied. If the court doesn't have any questions, the government will rest on its brief. With respect to the issue of whether robbery in the first degree under 53A134A4 is a violent felony, as you can gather from my opening remarks, our primary position is whether the first two robberies amount to a criminal episode. The second question on this appeal goes to the issue of whether the first degree robbery statute constitutes a violent felony under ACCA, which, as the Court is aware, is a very thorny question and a very unsettled question at this time in the circuit and across the country. Two weeks ago, the case of the United States v. Shabazz was argued before a different panel, and there were a number of questions about that statute. We submit to this court that you don't need to reach that issue, that difficult issue, because of the fact that the compressed time and location of the first two robberies is enough to require reversal here, and that's our primary position.  .